Williams v. Buffalo Public Schools, but the second case is basically the same lawyers, same issues, and it doesn't seem that any of the issues turn on unique facts. And so, Mr. Cott, I see you on the screen. Can you hear me okay? Yes, Your Honor, I can. Good. So I was wondering, would it be okay if we just argued both of these cases at the same time? I'll give you a little extra time if we need it. We may not need the full time allotted, but I just seem to make more sense to do that since there really seem to be identical issues and arguments. Is that okay with you? Yes, absolutely, Your Honor. Okay. Mr. Quinn? Yes, Your Honor, that's fine. Okay, so let's do that. I'll set the clock for ten minutes, but if we go over, don't don't sweat it. I'm not gonna shortchange you, but I'll just, we'll start you with eight minutes. You'll have two minutes for rebuttal. But if you need more time, and we've got a head of steam going, then I'll just extend the time. Okay? Okay. Great. All right, so give me just two seconds to get set up. And all right, the floor is yours, Mr. Cott. Great, thank you, Your Honor. Essentially, these cases are a repeat. These have already happened at the Second Circuit. We were here prior to the pandemic. They're almost ten years. They're going to be ten years. What was transparent with my clients, that my clients were trying to finish their education in order to qualify for certification. The employer knew that the entire time. There was no change. There was no interruption as far as the alleged breach on my client's part regarding certification. There was no waiver period or a rescission of the waiver at the time to cure the breach. There was no warning that the rescission was going to occur. The employer simply decided shortly after they obtained the certification that was required to do the job, the certification required, the internship certificates, the employer voted to terminate them. Within days of receiving their certification, each client receiving her certification. Let me ask you this. I mean, hypothetically, if someone is hired as a delivery driver, and the requirement is that they have a license to drive upon the roads of the state, and they come in and they take the job, and it turns out what they have is a learner's permit, that is to say they can't drive unless somebody is sitting next to them, would you consider that a fulfillment of the requirement? This isn't a learner's permit, but according to the Attorney General. It's an internship, it requires somebody to backstop them. That's why I come up with that hypothetical. I don't know if you know this, but the Attorney General, State Education Commissioner, amicus brief, this is the equivalent. There was no restriction as far as what they could do in their jobs. They could supervise, they could do all of the requirements that the job description had apparently set up. And I'm not an expert in amicus brief, in what if concluded, but they concluded in their findings. They investigated it, and they made findings. Yeah, but I understand all that, and you're quite correct, but your adversary says that this is not what anyone would have intended, because with the internship certification, the person has to be supervised by somebody else while they're doing their job, and nobody anticipated that. That's why I'm saying it's like getting a learner's permit instead of a driver's license. Well, I think that argument is very weak, because the employer at one point requested that they, through Dr. Brown, requested that they apply for both the transition to DE and an internship certificate was rejected was because of the error on the part of Mr. Downs in the State Education Commissioner's office. So the employer themselves actually requested at one point that both clients apply for the internship certificate. Well, that goes to your waiver argument, I suppose. But just as a factual question, it seemed to me that the transitional DE certificate also requires a degree of supervision, right? That is correct, Your Honor. Absolutely. That was another issue that the State Education Commissioner, they brought out in the amicus brief, that the transitional DE requires supervision, and that was one of the certifications that was being promoted by Dr. Jaron Brown, and the only reason that that wasn't followed through was because the sponsoring education institution, SUNY Oswego, was not able to endorse the transition DE certificate. Now, I mean, I'm sorry. Let me just finish up, follow up on this. I mean, the intern certificate is only good for two years, right? Correct, Your Honor. So at some point, to comply with the contract, your clients would have had to get a permanent or different certification, right? Correct. They were working on it. They were in the Superintendent Development Program, the SDP, through SUNY State University of New York at Oswego, and as a result, they were on their way. They wouldn't have even been issued the internship certificate unless they had at least half the coursework completed. So they were at least 50% of the way there, and my understanding is that I believe it was Dr. Williams completed the coursework and sat for the exam shortly after she was terminated, and Dr. Morrison was well on her way to achieving that at the time of termination. Was the contract, though, wasn't that just for a two-year period in any event? Am I getting that? Yes, Your Honor, a two-year period, correct. They would have had their certification on before the two-year period was over. Right, and it seems, I mean, some of these questions about the plaintiff's ability to do the job or whether or not, how that would have played out, I mean, to my mind, those seem like factual questions. I mean, in terms of what the language of the contract says, specifically paragraph 13, you know, the requirements are as stated by the Department of Education, and to the extent perhaps there's good cause or other reasons or other bases in the contract, those are not matters I would think that are appropriate for determination on summary judgment, because it seems like there are factual disputes as to what exactly the plaintiffs would or would not be able to do. Is that correct? That is correct, Your Honor. That is absolutely 100%. And as a matter of fact, it's been brought out in my papers with other observers that I have spoken with, not necessarily related to this case, but other individuals have stated that as a matter of course, the superintendent has to work as a standard part of her job. So there was already a revision going on for the period of time my clients worked for the Buffalo Board of Education. Well, I don't think we can rely on the sort of things you've heard from other people that are not part of the record, but you didn't move for summary judgment, right? There was no cross motion for summary judgment. That is correct, Your Honor. So, I mean, you intend to argue waiver, but your view was that even that is a question for the PAC Fund, for the jury. Is that right? Yes. Yes, Your Honor. There are questions of that back there, obviously. The cases are relatively straightforward, but there are complexities that come out, and the defense has certain issues that we believe are clear, but in their mind are not clear. So we believe those are essentially questions of back for interpreting. So in your view, all that remains then is to have a trial?  All right. Any other points you wanted to make, Mr. Kahn? Well, I did want to bring up the fact that the internship certificates are not, well, they're not renewable. So if it's a two year period, there's very little opportunity beyond two years to work with an internship certificate, and there have been other superintendents in New York State that have worked with internship certificates and successfully completed the superintendent development program and went on to become full-fledged certified superintendent or school district leader, as it's known, holding members of the education establishment, if you will. What is at stake here? Is it the second year, or is it two years of salary plus moving expenses? Yes. The contract essentially off the two years of full salary and benefits. I don't believe there are given any moving expenses at that point as far as coming to Buffalo. I'm just wondering how you got to $60 million. Oh, well, we're actually down to $4 million because we have the punitive damages. So the punitive damages were 10 times the, it's basically their lost future opportunity that these poor ladies have not had the opportunity to work in their field since they've been terminated. And they have put in, I believe, over 100 applications by now for various administrative positions across the United States that their nation won't hire. They've been sending things out. They have a very good specialty. Their urban school district, failing urban school district turnaround specialists. So they should be employable. They should be marketable. They shouldn't have a problem getting equivalent positions to what they had. They have not been able to do that.  You're welcome, Your Honor. Okay. So Mr. Cott, that covers what you wanted to cover for your two clients? Unless the court has further questions. Unless they need to talk. No, I think... You'll have two minutes of rebuttal. You'll have two minutes of rebuttal, but we have no further questions. So we'll now hear from your adversary, Mr. Quinn. Thank you, Your Honor. Thank you. Mr. Quinn? Good morning, Your Honors, and may it please the court. Just to address some of the issues. It is the defendant's position that the only thing at issue in the remainder of this case, if it were to get through breach or some type of finding, is the remainder of that contract. And I will represent that we have made extensive efforts to try to resolve this case, and we have been unable to do so because of that $60 million demand. The reason I ask is there are facilities that this court offers for confidential negotiations. It seems like the kind of case that would lend itself to that, but apparently not. The issue was the damages. I think there is a belief by the plaintiffs that it is not limited to the remainder of the contract. It is something far beyond that, which is how, apparently, they got to that $60 million number. Why is there a problem with supervision when there is a superintendent who supervises? The superintendent supervises a school district. So the superintendent oversees the entire school district. And that includes everybody who is working there, right? Theoretically, it includes every employee in the entire district, which is thousands of them. But that is why you have those cabinet levels. And wouldn't the supervisors here report directly to the superintendent? They do report directly to the superintendent. And in instances where the superintendent is not available, they serve in place of the superintendent. Superintendent cannot, and this is the reason laid out extensively in Dr. Darren Brown's testimony. The superintendent can't- Which one serves in place of the superintendent? Both of them could serve in place of the superintendent. There is only one Miss Williams. There are a few Miss Morrisons, as sort of laid out in the testimony. But I'm going to step back a little bit, Your Honor, because I think the learner's permit analogy is apt. I think that is appropriate. I think that is what is going on here. And I think if you got to the benefit of the bargain, that is not what the district was looking for in making these employees. But you knew they didn't have these certificates when you hired them, right? There's a 40-day window in which these people are allowed to work without certificates. So it was known that they did not have those certificates. And the thought was they could get them in 40 days? They could get them within 40 days. They could get them as needed. It was their responsibility to get them, Your Honor. And I just want to say that it's important to think about how the district works here. So you have the superintendent signing the contract. You have the board, which meets periodically. They're not there every day. They meet once a month, who certifies the contract. They ratify the contract. And then you have someone like Darren Brown, Dr. Darren Brown, who works as talent management. He's the one who tries to assist, make help when he can. And his efforts are extensive to try to get these plaintiffs to get the certifications that are required. And there is no question, Your Honors, to get to sort of some of the questions of fact that have been alluded to. They did not have the certifications required for months. Well, they didn't have them when they were hired. And then they didn't get them, obviously, up until they were terminated. Other than the internship one. But it seems, the record seems to reflect that everybody knew this. You were all working together, which sounds like a waiver, doesn't it? I don't know that everyone knew this. The talent management knew this. Darren Brown knew this. And he was trying to work with them to get them those certifications. He directed them. And this is not the board's or the district's responsibility to get these certifications. This is not, to go back to your analogy, a taxi cab company hiring a taxi driver. And then the taxi driver's saying, no, I just have my learner's permit. And then the taxi driver company has to walk them down to the DMV, wait on line for six hours at the DMV. What if the employer says the learner's permit will be good enough? Then the employer gets the benefit of that bargain in those circumstances. And why isn't that this case? Because the additional responsibilities that would have been afforded, that would have been required on the district, had the internship certificate been allowed. And to be clear, that internship certificate was not even received until March 29th, 2014. This was after both employees had been placed on administrative leave. So you have to address the waiver argument at some point, I believe. To get to these questions of fact, I believe, Your Honor, you're going to have to find that there was some type of waiver here. And if you look at the record in total, there is absolutely no evidence. No one's saying, don't worry about it. No one's saying, oh, you can get to it. Encourage them to pursue these alternatives. The only reason they had to encourage them to pursue these alternatives is because the plaintiffs were not able to get the normal professional certificates that they should have received. Well, that may be, but then they encouraged them to get it. They didn't encourage them to get it just to enhance their resume, presumably. They encouraged them to get it so that they could function in this position. The district had invested significant resources, and I want to be clear that these two employees were paid during this time period. And they had invested certificate resources, and there was no ill will. There are no ulterior motives here. They were trying to get these employees to get the certifications that were required of them, pursuant to the contract. That should not be held against the district, and specifically, it should not be held against the board. Well, maybe it should or maybe it shouldn't. It sounds like it's a fact question as to whether or not there was a waiver. And that waiver usually is a fact question, right? So the issue here is, is there no reasonable fact finder that could conclude that the defendants, the board and the others, through their actions, waived paragraph 13 of the contract? Yes, because of paragraph 18 of the contract. There is a no waiver provision in this contract. So to get to the waiver argument, I mean, it's clear that they had to maintain these certifications throughout the course of their employment. It's clear that up until the point and after they were placed on administrative leave for not obtaining those certifications, they didn't have them. There's no question of fact as to that. They may have been in the process of getting them. They may have been going to school to get them. The district may have been trying to encourage different ways to help the problem. But the fact of the matter is they didn't have them. And at no point did anyone from the district, and the only testimony, again, is from this Dr. Darren Brown, who is a wonderful employee who was doing what he could do in his role as talent management, to try to get these employees to get the certifications. There's nothing from the superintendent. There's nothing from any board members who indicated to anyone that this was acceptable. And the fact of the matter is, when they were placed on administrative leave on March 20, 2014, they did not have any applicable certificate. It seems like, I mean, the arguments you're making, some of the points are valid, but to the extent that there is that Dr. Brown is, perhaps by his actions, by continuing to say, let's keep trying to get these certificates, to say that, well, I don't know if you're suggesting he's not authorized to do that, the board didn't approve, but to me, that is an unresolved factual issue. Because clearly, what we are to make of the fact that they were engaging in these actions should be relevant to the question of whether or not, you know, you keep going back to, like, they didn't have their certificates for this long and that long, but the facts are that the reasons why they didn't have it, there may be disputes about that, but it's certainly not clear that there's no, that by their actions, Dr. Brown, even if he was not the board or the superintendent, was engaging in actions that I think a reasonable jury could at least consider about amounting to some type of waiver of this requirement that they have the certificates. Your Honor, I would tend to agree with you if this were some type of negligence action or something along those lines, but it's not. It is a breach of contract action, and the court at the district level indicated that this is a matter of contractual intent, and what are the terms of the contract saying? You don't need to get to these other exterior evidence. It should not be, it's only coming up because there's some argument being made, and there is no email that says don't worry about it. There is no burden. But we do have, I mean, kind of pulling back a little bit from the waiver question, I mean, if this is, I agree, at the bottom it's a breach of contract issue. To me, you seem to be getting away from sort of paragraph 13 and whether or not that would allow this termination. It's odd to me that on the prior appeals, and I don't know if you were involved in the case at that point, the parties seem to be suggesting that, well, what's at issue as to whether or not paragraph 13 applies is the question of what kind of certifications are needed. That seemed to be what the prior appeals were focusing on. That also seemed to be on what the district court, at least initially, was focused on. What's the required certification? And so now we appear to have clarity on what the required certification is, and that the intern certificate, at least as far as the Department of Education, which is what's referenced in the contract, says that's okay. And now we're kind of moving on to, well, that's not really what the question is. But if that's not really what the question is, these other questions do seem very much fact-based. I would say, Your Honor, I was not involved in the other appeals, but I think the intent and motivation was to look at the regulations, which we believe were unclear at best at the time. While they may have been clarified or we would submit change through subsequent affidavits and things like that, through the amicus brief submitted by the Education Department, that was the belief at the time. But I would submit that the belief is essentially irrelevant, because I do acknowledge that we have to address the internship meaning in terms of the education at some level. But why? I mean, it seems to me... Because of... Well, I mean, if the waiver... Basically, I thought your position was the no-waiver clause trumps everything, and so you can assert this at any time. That is our position. We need to address it because of, Your Honor's point, that it has previously been argued. That was essentially the argument up until this point, because that was the belief. And it continues to be the belief that an internship is not the equivalent of a full professional license. It is a learner's permit. And that was the real... If you needed to get some motivations or intent, and I don't think you do because of the arguments that we previously made, it was that. It was simply that we don't want an intern. We want a professional, and if you look at the language, it's at best not clear, and it is fundamentally... I'm sorry to interrupt. You have, I think, taken the position that the transitional D certificate would meet the requirements of the contract. Haven't you? Well, I have not, Your Honor, and no one has seen my position. That's a position of the district. I would say that, and I thank you for bringing that up because I did want to address that. I would say that that is not material or relevant to this determination because, again, you don't need to get there. But if you did, essentially what Dr. Darren Brown was doing was trying to figure out what is the best way to do this. And at some level, because of the contract, because of the responsibilities, because of the duties, because of the benefits that were bargained for, the district did have the ability to look at this. And I think Judge Dracy says it. Could the district have accepted an internship certificate? Could that have happened under the contract? Under the interpretation? I believe it could have. Was it required? No. Does the failure to do so amount to a breach of contract? Absolutely not under any reading of the contract. If they could have accepted it, then presumably it authorized the plaintiffs to act within the area of service in which they were engaged. No, the district could have taken on additional responsibilities, which the district does all the time in doing these additional responsibilities that would have been for an intern. That was not bargained for. Could the district have done it? Yes, the superintendent could have said, it's worth it to me under these circumstances, but that would not have changed the terms of the contract. But then if the superintendent could have done that, then the superintendent would have authorized these plaintiffs to perform the service for which they were hired. At that point, if the superintendent had done that, you'd have a valid or at least an arguable argument for a waiver. The superintendent did not do that, therefore you don't have an argument for a waiver. But the state education department said an intern certificate is recognized as a valid credential authorizing the holder to act within the area of service for which the certificate is valid. It sounds circular. It is circular. But once you concede, as I think you did, that they could perform these services if the board allowed it, then they're able to perform those services. I want to be clear, Your Honor. I did not concede that, and I didn't mean to mislead anyone. Could they have done, to use that circular, concentric view of this, could they have done some of those things? They probably could have done some of those things. Could they have acted within, i.e. not entirely? They probably could have done those things. So you're saying they could have authorized them to continue to function provided they didn't take on all of the functions associated with the job? They would have had to provide additional supervision. There would have had to be some type of communication between the district and the SUNY Oswego, which, as a SUNY Oswego graduate, it's not next door to Buffalo. It's hours away. And again, we're only getting here. The only reason any of these conversations are being had is because the plaintiffs, the employees, the people who signed the contract saying that they have to be certified did not get the certifications that were required of them. The paragraph 13 actually talks about the failure to maintain certificates required, right? It does. And so these folks didn't have the certificates when they started the job. So obviously they had to acquire them and then they would have to maintain them. So there's some argument that until they acquire them they are not in breach, right? No, I mean, I think that would go back... What does maintain mean if it requires you to have it before you started the job? Maintain means have. So maintain means to have at any given moment, I would say. I don't have a dictionary in front of me. But the way that you could interpret that is maintain... You have the 40-day window in front. You have 40 days where the State Education Department allows someone to do that. That's when these people started working. That's when the contracts were signed. They did not maintain at any point after that, however it's defined. They did not maintain the appropriate certificates up until arguably, depending on the interpretation of the internship, until March 29, 2014. It's nine or ten months after that. So at some point, Your Honor, to go to... Again, and I think you have to look at this through the waiver because you have to ignore... Or not ignore, but you have to sort of address the non-waiver clause in the contract and you have to address that maintenance issue. You have to... There has to be some timeline on this. There has to be some timeline. There isn't. I mean, that's the problem. It's a two-year contract. It requires the plaintiffs to pass any examinations the Department of Civil Service may deem appropriate for the position. And the amicus says, yeah, this internship certificate is appropriate for the position. They did not have that certificate until March 29, 2014. But your view is that you can hire them, you can string them along for months, tell them to get particular certificates, they then get their certificate, and then you can say, yeah, that one's not good enough, even though the amicus says that it's sufficient? So I want to address that, Your Honor. And I understand that point. And really, this is why the waiver... This is why that waiver concept, doctrine, why it exists. Because that is a valid point. Should you be able to string someone along and then at some point just rip the rug out from under them? One of the cases that is cited talks about a lease or something like that. And in that case, they turned it into an art studio. There were modifications made. They went in and they put up new equipment and they did all these other things. There was no benefit being afforded to anyone else. Here, the district is paying employees to do their job. And while they're paying employees to do their job, they are trying to help them get the certifications that were required. This is not stringing along, Your Honor. This is assisting. This is employing. This is paying. But if they did what they were asked to do, and then they're told, oh, by the way, that's not sufficient. You don't have the right certificate. Stringing along is not the right word, but it does seem that they've still had the rug pulled out from under them. Again, I think you get to Dr. Darren Brown's role and his testimony. And what he testified to with the transitional and the internship is, we're not really sure what's the best way to do here, but we want to work with you. We want to help you. So we're going to propose these two different certificate paths that you can go down. Again, there is absolutely no responsibility in the contract to do any of these things. It's not implied in the education law. It's not in the contract. The responsibility... But if they then have... If you're saying the transitional D is sufficient, your side is saying that, right? Has said that before. Said it in the district court, right? That was in the testimony. I would say that that is not material to any of the arguments being made before your honor. Well, it's material because it also requires the same supervision that you and Judge Geraci found to be central to why these folks didn't have the certificates they needed. So if they both require supervision, it's hard to see why one is OK and one is not. It may or may not be true, but they never got a transitional. They couldn't get a transitional for whatever reason. They got the internship. I get that. But the chief objection to the internship certificate is that it requires supervision. The transitional D also requires supervision. And so if that one's OK, it's hard to see why the first one is not. I think you have to go back to the point of... Before the amicus, and we would say still to this day, but it's neither here nor there to some extent, it did appear from reading the statute that the internship was different than the transitional. That is how Dr. Darren Brown interpreted it. That is why he testified that New York City doesn't allow internships, and nor does the city of Buffalo. He called internships something to the effect of, and I don't have the language right in front of me, sort of the last resort, and that the city of Buffalo school district did not have to to be able to employ the people that they needed to. And in the past, they had accepted transitional Ds. They interpreted that differently than the internships. And again, I don't think that it is a... There's a footnote in the district court decision that talks about what are we doing here? Are we just interpreting the statutes, or are we applying them in terms of a contract? And if you apply them in terms of a contract, I don't think that is a material fact at issue in this case. Well, the whole thing, I'd say, strikes me as pretty clueless. It's hard to imagine you'd hire two different people at pretty high-level positions, tell them they need certifications, but say you don't really need them right away, and you say that 40 days is what they get to get them. You can't get a permanent certification in 40 days, right? You can, and it's in the record. Mary Gwinn, who was hired around the same time and who actually is the defendant in this case, got it within two and a half weeks because she had the required certifications and experience to satisfy the State Education Department to get a professional certificate. But these people could not have gotten them in 40 days, right? You hired them, so you must have understood that they didn't have what was necessary to get it within 40 days. So this is in the record. This is in the testimony of Dr. Darren Brown. I think he characterized it himself as hearsay, but there was conversations with the State Education Department about what was lacking in this, and I think the phrase that some of the credentials were suspect was used. I think that the idea of an online university was brought up. There was something that the State Education found in these two applicants that were not found in others, and this is in the record, Your Honor, that caused them to not get the professional certificate. There's a difference between promptly getting a certificate when you already have all of the qualifications, all the credits, and all the experience, and having to get a qualification within 40 days when you still need to take courses or acquire additional qualifications. No, respectfully, Your Honor, that's sort of a little bit cart before the horse because Mary Gwinn was also from out of state. She also did not have the coursework or anything like that. She got the coursework done in 40 days? No, the only reason the coursework comes up at all is because you're doing an internship. Professionals don't need to go back to school. Interns do, to make the point pretty clear. And in this case, because it was an internship, they had to go to school. That was not in the contract. That was not preferable, I'm sure, to anyone from the district perspective that we were going to have people going to school while they were doing these things, and that your talent management was going to have to be working with someone from Oswego and someone from the State Education Department about what the respective meanings of internship versus transitional was. The hope and intent, I'm sure, was for them to just get the professional certificates in a timely manner. That didn't happen, which is why, and through no fault whatsoever of the district or anyone associated with them, that didn't happen, which is why all of this played out in the manner that it did. All right. Anything else you wanted to cover? I know you've combined two, so I think you've covered them all over, but I don't want to shut you down before you get to one. No, no, I appreciate it, Your Honor. I think that's probably it. I've taken up enough of your time. Thank you. Thank you, Mr. Quinn. Okay, Mr. Cott, you have a couple of minutes to rebuttal. Sure, Your Honor. I just have a few points to make. First, the contract language itself, paragraph 13, deferred to the State Education Commissioner or the State Civil Service Commission for whatever certifications are required  The school district, within that body of the contract, did not give itself the discretion to determine what is and what isn't suitable certification. By virtue of entering that contract with my clients, they deferred to another government body or two other agencies to determine what is appropriate and what is inappropriate for certification to perform the job. Now, with that being said, Dr. Morrison and Dr. Williams were well-qualified based upon their experience or their work in other family urban school districts. They were so uniquely qualified in that they had a track record of helping school districts that had been in similarly desperate situations with family and students to get the school districts to perform to a much higher level. Therefore, they had a track record. It was the reason that they were hired was because of their talents, which I believe are somewhat unique in that individuals like my clients aren't always available. I know that's not in the record, but that is, I believe, the reason that they were selected. And it is true, when they were hired, everyone knew that they came from out of state. They had no New York State certifications. They had no New York State experience. Therefore, the idea that within 40 days that you could go out and get a suitable certificate is rather laughable, especially someone like Dr. Pamela Found who was the superintendent who was the signatory to the contract. We signed the contract. She knows how difficult it is to become uncertified in New York State having to supervise a large urban school district with literally thousands of employees and most of those employees requiring some form of certification. She was well-versed at the time in knowing how difficult this would be to get a certification. And with that being said, it's a question of fact because that hasn't been developed. The record hasn't been developed with respect to Dr. Pamela Brown. She was not the proposed. There's been no input on her part from her regarding this selection and hiring process. So there's a lot of I's that still need to be dotted and T's that still need to be crossed regarding what was the mindset at the time of hiring. It's obvious she knew that they weren't certified. So what happened after Dr. Darren Brown, the talent management director, at one point suggested that they try the internship certificate route and of course Dr. Brown didn't have the clarity of the state education commissioner's office when he said that and then Mr. Downs, an employee in the office, apparently erroneously advised that the internship certificate was not valid. They couldn't use it and then a gentleman, a supervisor of the state education commission, the amicus brief, found a supervisor with the initials RJ sent out an email advising that the internship certificates were valid, that they were sufficient. So this really, if anything, there should be a case of equitable estoppel applied to the school board because their agent, Dr. Darren Brown, at one point was in full agreement for an internship certificate that would be suitable for their employment. That's an affirmative defense, right? Well, maybe it seems like we have some sort of an estoppel argument that they should be allowed to... But did you assert one in your complaint? Or did you assert one at some point? I didn't. It wouldn't have been known at that point in time. We would have had no knowledge of everything that was going on behind the scenes until we received discovery. Obviously, if you file your complaint, you're not privy to... No, I understand. Well, I think we understand the arguments. We've got two briefs for the price of one and we have an extended argument, so we're going to reserve decision. Thank you both, and you'll be hearing from us. Have a nice weekend.